UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PFAM, INC., d/b/a FOLEY & ASSOCIATES,

   Plaintiff,

v.               CIVIL CASE NO. 06-11015
                HON. MARIANNE O. BATTANI

INDIANA TUBE CORP.,

   Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Before the Court is defendant Indiana Tube Corporation's Motion to Dismiss (Doc. #14). Indiana Tube asks the Court to dismiss Plaintiff's First Amended Complaint in its entirety for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). Plaintiff's Complaint states claims for breach of contract and violations of the Michigan Sales Representatives Commission Act and the Procuring Cause Doctrine.

### II. STATEMENT OF FACTS

In 1998, the parties entered a sales representative agreement. Plaintiff agreed to use its best efforts to solicit accounts and orders for the sale of Defendant's products to automotive manufacturers in Southeastern Michigan. Defendant agreed to pay Plaintiff sales commissions at rates varying between 3% and 5% for any sales resulting from accounts or orders Plaintiff procured. However, the agreement did not address how post-termination commissions would be handled.

On January 4, 2006, Defendant terminated the agreement.  Upon termination, Defendant agreed to pay Plaintiffسixty days of post-termination sales commissions.  On February 2, 2006, Plaintiff filed the original Complaint in this matter in the Oakland County Circuit Court.  On March 9, 2006, Defendant removed the action to this Court.  Plaintiff brought this complaint based on breach of contract, violation of the Michigan Sales Representatives Commission Act, violation of the Procuring Cause Doctrine.  Plaintiff seeks sales commissions on all accounts it procured, and commissions for all sales it made on a life of the part basis.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief may be granted."  "This rule allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true.  Under this standard, a complaint should be dismissed only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996).  The Sixth Circuit has made it clear that "[a] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).  The United States Supreme Court recently reiterated this principle, holding that a complaint that fails to allege facts supporting basic elements like loss and loss causation fails to satisfy Federal Rule of Civil Procedure 8.  See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 338 (2005).  When faced with a FED. R. CIV. P. 12(b)(6) motion to dismiss, a district court,

> . . . must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can

>prove no set of facts in support of his claims that would entitle him to relief. Meador v. Cabinet for Human Resources, 902 F.2d 474, 475 (6th Cir.), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). A complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). A judge may not grant a FED. R. CIV. P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. Id.

In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993). However, the court does not give the presumption of truthfulness to any legal conclusions, opinions, or deductions, even if they are couched as factual allegations. Sexton v. Barry, 233 F.2d 220, 223 (6th Cir. 1956); Tidik, 938 F.Supp. at 421; Western Mining Council v. Watt, 643 F.2d 618, 629 (9th Cir. 1980); Mitchell v. Archibald & Kendall, Inc., 573 F.2d 429, 432 (7th Cir. 1978). Accordingly, to determine whether a complaint should be dismissed for failure to state a claim under Rule 12(b)(6), this court must examine the applicable substantive law and the facts alleged in the plaintiff's complaint.

## IV. ANALYSIS

### A. Plaintiff Sufficiently Pleaded a Claim for Breach of Contract

To recover for breach of contract under Michigan law, a plaintiff must prove: 1) the existence of a contract; 2) the terms of the contract; 3) a breach of the contract; and, 4) the breach caused injury. Webster v. Edward D. Jones & Co., L.P., 197 F.3d 815, 819 (6th Cir. 1999).

The allegations in Count I of Plaintiff's First Amended Complaint assert that the parties entered into a sales representative agreement, that the agreement required Defendant to pay sales commissions to Plaintiff with regard to all accounts and orders procured, that Defendant breached the agreement by failing to pay all of the commissions earned, and that Plaintiff was

3

damaged in an amount in excess of three hundred thousand dollars.  First Am. Compl. at 2-3, paras. 6-10.

Defendant argues that the pleadings are insufficient because there are no attempts to plead the terms of the contract that would entitle Plaintiff to post-termination commissions on a customer procurement or life of the part basis.  Defendant also asserts that because Plaintiff failed to plead any specific agreement, or portion of an agreement that has been breached, the Count should be dismissed.  In support of its claim, Defendant cites an Eastern District of New York case, which held:

> Although the existence of a contract is alleged, plaintiff fails to set forth any specific information as to when the agreement was made, the terms of the agreement upon which liability is predicated, or any other evidence supporting the formation of an agreement.  Consequently, plaintiff's complaint fails to adequately state a claim upon which relief may be granted.

Posner v. Minn. Mining & Mfg. Co, Inc., 713 F.Supp 562, 563-64 (E.D. N.Y. 1989).

Posner is distinguishable from the present case.  Defendant does not dispute that a valid sales representation agreement was formed.  Further, in this case, the Complaint states when the agreement between the parties was formed, sometime in 1998, and the terms upon which liability is predicated.  More specifically, Plaintiff alleges that it agreed to use its best efforts to solicit accounts and orders on behalf of Defendant, and that Defendant agreed to pay commissions on all sales so generated. First Am. Compl., at 2, para. 7.  Plaintiff has also identified the breach: "Defendant has breached the sales representation agreement between the parties by failing, refusing and/or neglecting to pay sales commissions to the Plaintiff with regard to all sales to accounts procured by the Plaintiff and further with regard to all sales relative to orders procured

by the Plaintiff." Id., at 3, para. 9.[1]  Federal Rule of Civil Procedure 8(a) only requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Here, Plaintiff has met its pleading burden by adequately alleging a contract exist, the relevant terms were breached, and that it was injured as a result of that breach.

Defendant also argues that the breach of contract claim should be dismissed because it runs afoul of the statute of frauds. However, the statute of frauds is not applicable in this case as there is no allegation that the agreement between the parties could not have been terminated by either during the first year of its existence. Michigan's statute of frauds states in part:

> In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise.
>
> (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.

MICH. COMP. LAWS ANN. § 566.132(1)(a).

The Michigan Court of Appeals has previously held that absent evidence that the parties understood that the plaintiff could not secure any sales within one year of the agreement, an oral sales representation agreement is not unenforceable under the statute of frauds. Drummey v. Henry, 320 N.W.2d 309, 312 (Mich. Ct. App. 1982). In reversing the trial court's decision, the

---

[1] Defendant also cites Nordic Bank PLC v. Trend Group, Ltd, 619 F. Supp. 542 (S.D.N.Y. 1985), and Timmons v. City of Hartford, 283 F. Supp. 2d 712 (D. Conn. 2003) in support of its motion. Those cases are also distinguishable. In Nordic, the Court noted that Trend failed to "allege any facts that indicate if or how [the bank] breached the option agreement." Nordic, 619 F. Supp. at 562; and in Timmons, there was a written agreement, and the complaint failed to specify "any provision of any written contract or agreement upon which liability is predicated . . . ." Timmons, 283 F.Supp. 2d at 719. Here, Plaintiff has alleged how Defendant breached the agreement, and the provisions that gave rise to liability.

court of appeals stated "[b]eing terminable at will, indefinite term employment contracts are not generally regarded as being within the statute since the possibility exists that the contract may be terminated in less than a year from its making." Id. Additionally, when a party has fully performed under the terms of an agreement, the statute of frauds will not operate to bar that party from recovering the value of the services performed. Ordon v. Johnson, 77 N.W.2d 377, 380 (Mich. Ct. App. 1956). Therefore, Count I is not barred by the statute of frauds.

### B. The Michigan Sales Representative Commission Act

The Michigan Sales Representatives Commission Act ("MSRCA") requires a principal to pay a terminated sales representative all of the commissions due at the time of termination within forty-five days after termination, and to pay all commissions that become due after termination within forty-five days after such commissions become due. MICH. COMP. LAWS ANN. § 600.2961(4). A principal who intentionally fails to pay commissions within these time limits is liable not only for the overdue commissions, but also for an additional amount equal to two times the overdue commissions, or $100,000, whichever is less. Id., at § 600.2961(5). The statute also states that "[t]he terms of the contract between the principal and sales representative shall determine when a commission becomes due." MICH. COMP. LAWS ANN. § 600.2961(2). See also e.g., APJ Assocs., Inc. v. N. Am. Philips Corp., 317 F.3d 610, 616 (6th Cir. 2003), Weldon v. Great White N. Distrib. Servs., 197 F.Supp. 2d 893, 907 (E.D. Mich. 2002).

Defendant argues that Plaintiff's claim under the MSRCA should be dismissed because it has not alleged sufficient facts to support a breach of contract claim, and thus, has failed to identify an independent basis upon which commissions are due. It also asserts that the MSCRA does not create an independent basis to assert a claim for commissions, but merely addresses the

6

time frame within which a principal must pay its sales representative's commissions. However, as discussed above, Plaintiff has alleged sufficient facts to support a breach of contract claim, and therefore, has identified an independent basis to support its claims for damages under the MSRCA.

### C. Plaintiff's Claim For Violation of the Procuring Cause Doctrine

In Count IV of the Complaint, Plaintiff sets forth a claim for post-termination commissions for all purchase orders it procured for life of the part, and for all purchase orders by customers it procured for the life of the part.[2] Under the procuring cause doctrine, a sales representative is entitled to commissions, including post-termination commissions, on sales that he generated. See Reed v. Kurdziel, 89 N.W.2d 479, 482-83 (Mich. 1958)(finding that there was ample evidence from which the trial court could conclude that the oral agreement between the parties did not have a time limitation, and the plaintiff was to receive commissions on original sales as well as reorders.). The Reed court allowed the plaintiff's executrix to collect post-termination commissions on his accounts based on a customer procurement theory.[3] Id., at 290.

---

[2] "Life of the part" commissions are a common practice in the manufacturer's representative business. See Terry Bar Sales Agency, Inc. v. All-Lock Co., Inc., 96 F.3d 174 (6th Cir. 1996). Many sales representatives commonly insist on "life of the part" provisions in agency contracts "because the sales representative must invest a great deal of time, effort, and money in securing an initial sale. However, after an initial sale is made, the buyer may continue to use the part in the manufacture of its automobiles for many years." Kingsley Assoc. Inc. v. Moll Plasticrafters, Inc., 65 F.3d 498, 502 (6th Cir. 1995).

[3] Plaintiff claimed he would receive commissions, not only on the original orders taken from the customers he had obtained, but also he would receive commissions on all reorders from such customers. Defendant claimed Plaintiff was to receive his commissions only upon written orders which were obtained by him and transmitted by Plaintiff to the Defendant.

The Michigan Supreme Court set forth the principle that governs disputed post-termination commissions:

> The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretation, all the circumstances must be considered . . . .

Reed, 89 N.W.2d at 482-83 (quoting RESTATEMENT (FIRST) OF AGENCY § 449 cmt. a). The court continued on, explaining: "[i]n Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not be [sic] has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale." Id., at 483 (citations omitted). The court went on to explain, that "[i]n Michigan the rule goes further to provide if the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause." Id. Finally, "[w]here the contract is silent, the agent is entitled to recover a commission on a sale, whether or not he personally concluded it, only where it can be shown that his efforts were the 'procuring cause.'" Id., at 295.

However, the doctrine applies only where the parties' contract does not address post-termination commissions. See APJ Assocs., Inc. v. N. Am. Philips Corp., 317 F. 3d 610, 616 (6th Cir. 2003)(holding that the MSRCA does not create a duty to pay post-termination commissions when the parties agreement was to the contrary, and that under Michigan law, a sales representative may only obtain commissions as the procuring cause of post-termination

sales where the written agreement is silent). Thus, the doctrine cannot alter the express terms of an agreement as to the payment of post-termination commissions.

Defendant contends that the procuring cause doctrine does not allow recovery of commissions under a life of the part or customer procurement basis. Rather, Defendant argues that the doctrine only allows manufacturer's representatives to recover commissions for individual sales they procured.

The difference between customer procurement and sales procurement as a basis for commissions, was delineated by the Sixth Circuit,

> Customer procurement allows an agent to recover a commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale. Sales procurement allows an agent to recover a commission only on the specific sales that the agent procures. Subsequent sales to the same customer that are not procured by the agent do not yield a commission.

Lilley v. BTM Corp., 958 F.2d 746, 751 (6th Cir. 1992)(holding that summary judgment was proper where the plaintiff failed to present any evidence that there was a customer procurement contract, or that any unpaid sales procurement commissions were owed). Thus, in Lilley, the Sixth Circuit recognized that,

> [a]n agent may recover a commission for customer procurement or sales procurement. . . . . Whether an agent is entitled to commissions on a customer procurement or sales procurement basis is determined by the contract between the agent and the principal.

Id., see also Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc., 96 F.3d 174, 181 (6th Cir. 1996)(holding that summary judgment was inappropriate where the parties' agreement was silent as to post-termination commissions, and plaintiff alleged entitlement to commission on all reorders, on a life of the part basis, occurring before or after his termination.). Accord, Reed, 89 N.W.2d at 483, Militzer v. Kal-Die Casting Corp., 200 N.W.2d 323, 325 (Mich. Ct. App.

9

1972)(holding that the plaintiff was entitled to a 5% commission on all reorders occurring before or after his termination).  Cf., APJ Assocs., 317 F.3d at 616 (holding that where an agent does not participate in the negotiation of a contract, and the first purchase order was not received until two years after termination, the agent is not the procuring cause of the post-termination sales, even though he originally introduced the parties.).

Defendant cites the APJ decision as support for its contention that a sales representative cannot, as a matter of law, be considered the procuring cause of post-termination sales. However, the APJ decision does not support that argument.  In APJ, the Sixth Circuit recognized that a sales representative could not be the procuring cause of a sale at the time of his termination when that sales representative was terminated almost two years prior to the customer placing an order.  Id.  In that case, the parties' agreement provided "that commissions were to be paid on 'all sales solicited and orders received' while the agreement was in effect."  Id.  The plaintiff asserted that it was the procuring cause of a sale to GM because it had solicited the sale by introducing the parties.  The court held that a sales representative whose only involvement was to introduce its employer to a potential customer, without actually securing a sale, could not be considered the procuring cause of a sale that occurred two years after the employment relationship ended.  Id.  The Sixth Circuit's decision in APJ does not, however, support Defendant's contention that Plaintiff cannot assert a claim for post-termination commissions under the procuring cause doctrine.

Defendant also cites a Sixth Circuit decision that stated, "it is the acquisition of orders, not the acquisition of the customer that is protected by the 'procuring cause' doctrine . . . ." William Kehoe Assocs. v. Ind. Tube Corp., 891 F.2d 293 (Table), 1989 WL 146439 (6th Cir.

1989). However, that case is an unpublished decision that came before the decision in Lilley or Terry Barr, and thus, carries no precedential weight.

In another unpublished Sixth Circuit decision cited by Defendant, the court of appeals held that the plaintiff was not entitled to recovery under the procuring cause doctrine because all of his claims depended upon the effectiveness of his proposed contract modifications. Muqtadir v. Micro Contacts, Inc., 148 Fed. Appx. 348, 352, 2005 WL 1864775, **4 (6th Cir. 2005). In that case, the plaintiff's proposed modifications would have altered the parties' written agreement that, by its terms, limited post-termination commissions to orders received and accepted on or before the termination date. Id., at **1. The court held that because the modifications were not effective, the defendant was entitled to judgment as a matter of law as the procuring cause doctrine applies only where the parties' contract is silent regarding post-termination commissions. Id., at **4. Thus, this case lends no support to Defendant's argument that, as a matter of law, Plaintiff cannot state a claim for post-termination commissions based on customer procurement or on a life of the part basis.

Defendant also cites two Michigan District Court cases and a Michigan Court of Appeals case in support of its argument. In Butterfield v. Metal Flow Corp., the Michigan Court of Appeals held that there was competent evidence to support the jury's finding that the plaintiff was not entitled to post-termination sales commissions. Butterfield v. Metal Flow Corp., 462 N.W.2d 815, 818 (Mich. Ct. App. 1990). In that case, there was testimony that the parties' agreement called for a three percent sales commission to be paid for all accounts the plaintiff procured, but that the agreement terminated once the plaintiff ceased to be the defendant's sales representative. Id. The court held that there was sufficient evidence to support the jury's finding

that the parties' agreement was not silent as to post-termination commissions, but instead, the parties' agreement foreclosed the right to post-termination commissions.[4]

In <u>Roberts Assocs., Inc. v. Blazer Int'l Corp.</u>, 741 F.Supp. 650 (E.D. Mich. 1990), the plaintiff sued the defendant manufacturer for post-termination commissions for an account that the plaintiff claimed it had originally procured for the defendant.  However, prior to securing a sale, the defendant approached the customer and completed the sale on its own.  The court held that because the plaintiff did not negotiate the sale, but merely introduced the parties, it was not entitled to post-termination commissions.  The court reasoned that the plaintiff could not be considered the procuring cause of the sale because it did not claim the parties' agreement precluded the defendant from appropriating customers, or call for commissions for all sales to customers the plaintiff procured.  <u>Id</u>., at 653-54.  However, in the case *sub judice*, Plaintiff does not seek commissions for sales to customers that it alleges Defendant appropriated from it.  Moreover, in this case, Plaintiff does allege that their agreement did call for commissions based on a customer procurement basis.

In the final case Defendant cites, the items involved were a relatively small number of big ticket items - large powerboats - sold on a one-off basis to a number of different boat dealers.  <u>Fernandez v. Powerquest Boats, Inc.</u>, 798 F.Supp. 458 (W.D. Mich. 1992).  The fact that a dealer ordered one boat did not mean that the dealer would continue to order numerous additional boats in the future.  It was undisputed that, per the parties' agreement, the plaintiff's commissions were based on sales and customers the plaintiff recruited.  The agreement was, however, silent

---

[4] The court also held that there was sufficient evidence from which the jury could have inferred that the plaintiff committed the first substantial breach of the contract and that defendant was therefore not required to perform further under the contract.  <u>Id</u>., at 819.

regarding post-termination commissions. The court found that there was an absence of evidence that tended to show the parties intended the plaintiff would continue to receive post-termination commissions for boat sales made to dealers he recruited as customers. Id., at 461. The court went on to hold that the facts of the case did not implicate the Michigan Court of Appeals' holding in Militzer, because the "post-termination orders of power pleasure boats are not in the nature of reorders of fungible goods." Id., at 462. Thus, the court found that the plaintiff had no involvement in, and put forth no effort to, the subsequent boat sales that implicated the principle behind the procuring cause doctrine. Id., at 463.

In the case *sub judice*, when Plaintiff was successful in procuring a new account or order for the purchase of automotive production parts, that account or order would continue to result in sales for a long period of time. Thus, the facts of this case are much more analogous to the facts in Militzer than they are Fernandez. Moreover, the court in Fernandez did not find that the procuring cause doctrine foreclosed as a matter of law a plaintiff from seeking post-termination commissions on a customer procurement or life of the part basis.

Based on controlling precedent from the Sixth Circuit, the Court finds that when the parties agreement is silent, or there is a disagreement whether post-termination commissions were included as a term of the original agreement, a sales representative may state a claim for post-termination commissions under the procuring cause doctrine based on customer procurement and a life of the part basis.[5] Here, Plaintiff's Complaint contains either direct or

---

[5] The Court notes that Defendant may prove at a later time that post-termination commissions were not part of the original agreement through, e.g., "the parties' practical interpretation of their contract, and their course of conduct under that contract . . . ." Terry Barr, 96 F.3d at 180.

inferential allegations that Defendant agreed to compensate it for all customers and purchase orders it procured, that "the agreement was without limitation as to time[,]" and that Plaintiff "was to receive commissions on not only the original sales submitted by him but on all reorders."  Reed, 89 N.W.2d at 483, see First Am. Compl. at 2, para. 7, and at 5, para. 23.  Thus, Plaintiff may be able to present a set of facts that its "efforts were the procuring cause of" the post-termination sales.  Fernandez, 798 F.Supp. at 463.  Therefore, the Court finds that dismissal under FED. R. CIV. P. 12(b)(6) is inappropriate.

V.	CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **DENIED.**

**IT IS SO ORDERED.**

> s/Marianne O. Battani
> MARIANNE O. BATTANI
> UNITED STATES DISTRICT JUDGE

DATED: November 15, 2006


### CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

> s/Bernadette M. Thebolt
> DEPUTY CLERK

14